AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

**F I L E D**

**NOV 2 0 2019**

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH THE CELLULAR<br>TELEPHONE ASSIGNED CALL NUMBER<br>(571) 379-0261 | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  1:19-sw-1505

UNDER SEAL

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____ Northern _____ District of _____ Texas _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to distribute a controlled substance. |

The application is based on these facts:
See attached affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

AUSA Philip Alito/AUSA Michael Ben'Ary

_____
*Applicant's signature*

Jose J. Oquendo, Special Agent, ATF
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___11/20/19___

/s/
Michael S. Nachmanoff
United States Magistrate Judge
_____
*Judge's signature*

City and state:   Alexandria, Virginia

Hon. Michael S. Nachmanoff, United States Magistrate Judge
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

F I L E D

NOV 2 0 2019

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH WARRANT AND ORDERS PURSUANT TO 18 U.S.C. §§ 2703(C)(1)(A) AND 3122(A)(1) FOR THE | No. 1:19-sw-1505 |
| | No. 1:19-ec-1651 |

(1) DISCLOSURE OF PROSPECTIVE CELL-SITE DATA AND E-911 PHASE II DATA;

(2) DISCLOSURE OF STORED TELECOMMUNICATIONS RECORDS; AND

(3) INSTALLATION OF A PEN REGISTER/TRAP AND TRACE DEVICE

ON 571-379-0261

**APPLICATION IN SUPPORT OF SEARCH WARRANT
AND ORDER UNDER 18 U.S.C. § 2703(C)(1)(A)
AND ORDER UNDER 18 U.S.C. § 3122(A)(1)**

The United States of America, by counsel, hereby applies to the Court for a Search Warrant authorizing the disclosure of prospective cell-site and E-911 Phase II location data, as well as disclosure of stored wire and electronic transactional records, based on probable cause. Furthermore, to effectuate the prospective disclosure of location data, the United States also moves the Court, pursuant to 18 U.S.C. § 3122(a)(1), for a separate Order authorizing the installation and use of a pen register/trap and trace device or process ("pen/trap device").

This Application concerns the telephone number 571-379-0261 ("SUBJECT TELEPHONE NUMBER"), which is serviced by AT&T ("TELEPHONE SERVICE PROVIDER").

In support of the pen/trap device application, the undersigned Applicant states as follows:

1

1. Applicant is an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and therefore, pursuant to 18 U.S.C. §§ 3122(a)(1) and 3123(a)(1), may apply for an *ex parte* order authorizing the installation and use of pen/trap device anywhere within the United States.

2. Applicant certifies that this request is made in connection with a criminal investigation by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") ("LAW ENFORCEMENT AGENCY") into possible criminal violations of 21 U.S.C. §§ 841 and 846. Specifically, in July 2019, the LAW ENFORCEMENT AGENCY and the Prince William County Police Department began jointly investigating narcotics traffickers, and a cooperating source ("CS") told investigators that EDGAR HERNANDEZ-PEREZ was a cocaine distributor. Between August and October 2019, the government conducted seven controlled purchases of cocaine from HERNANDEZ-PEREZ using a cooperating source ("CS"). Before each purchase, the CS contacted HERNANDEZ-PEREZ by calling the SUBJECT TELEPHONE NUMBER to arrange a buy. The combined weight of the mixture or substance containing a detectable amount of cocaine is approximately 620 grams. Applicant certifies that information likely to be obtained from the pen/trap device is relevant and material to this ongoing criminal investigation.

3. The attached Affidavit (Attachment A), incorporated herein, by Special Agent Jose J. Oquendo of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), is submitted to establish probable cause for a Search Warrant and Order to disclose cell-site data and transactional and stored records for the cellular device assigned the SUBJECT TELEPHONE NUMBER under the evidentiary standard articulated by Federal Rule of Criminal Procedure 41(d)(1) and pursuant to 18 U.S.C. § 2703(c)(1)(A).

## PEN/TRAP DEVICE REQUEST

4.  Pursuant to 18 U.S.C. §§ 3122(a)(1) and 3123(a)(1), Applicant requests the Court issue an Order authorizing the installation and use of a pen/trap device. The term "pen register," as defined at 18 U.S.C. § 3127(3), is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." A "trap and trace device," defined at 18 U.S.C. § 3127(4), is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication."

5.  In accordance with 18 U.S.C. § 3121(c), Applicant has informed the LAW ENFORCEMENT AGENCY that it shall use reasonably available technology to restrict the recording or decoding of electronic or other impulses to the dialing, routing, addressing, and signaling information utilized in the processing and transmitting of wire or electronic communications so as not to include the contents of any wire or electronic communication. Accordingly, this Application does not seek authority to intercept the contents of any wire or electronic communication.[1]

6.  Based upon the above certification and pursuant to 18 U.S.C. §§ 3122(a)(1) and 3123(a)(1), Applicant hereby requests that the Court issue an Order authorizing the installation and use of a pen/trap device to record or to decode dialing, routing, addressing, or signaling

---

[1] The United States also will take reasonable steps to ensure that the pen/trap device does not capture any "post-cut-through dialed digits," which are numbers dialed from the cell phone after the initial call set up is completed.

3

information from the SUBJECT TELEPHONE NUMBER; record the date and time of such dialings or transmissions; and record the length of time the telephone receiver in question is "off the hook" for incoming or outgoing calls, without geographic limits, for a period of 60 days from the date of the Order or the date the monitoring equipment becomes operational, whichever occurs later.

7. Applicant further requests that the Court issue an Order, pursuant to 18 U.S.C. §§ 3122(a)(1) and 3123(a)(1), authorizing the installation and use of a trap and trace device and the activation of the CALEA Delivery System on the SUBJECT TELEPHONE NUMBER to capture and record the incoming electronic or other impulses that identify the originating numbers or other dialing, routing, addressing, or signaling information reasonably likely to identify the sources of wire or electronic communications and to record the date, time, and duration of calls created by such incoming impulses, without geographic limits, for a period of 60 days from the date of the Order or the date the monitoring equipment becomes operational, whichever occurs later.

ADDITIONAL REQUESTS

8. Applicant further requests, pursuant to 18 U.S.C. § 3123(b)(1)(C), that the Order authorize the installation and use of the requested pen/trap device on any changed telephone number(s) subsequently assigned to a cellular device bearing the same IMSI, MIN, IMEI, MSID, or ESN as the one initially associated with the SUBJECT TELEPHONE NUMBER, or any changed IMSI, MIN, IMEI, MSID, or ESN subsequently assigned to the same cellular device, or any additional changed telephone number(s) and/or IMSI, MIN, IMEI, MSID, or ESN, whether the changes occur consecutively or simultaneously, listed to the same subscriber, wireless account, or cellular device.

9.  Applicant further requests an Order directing the TELEPHONE SERVICE PROVIDER to notify agents of the LAW ENFORCEMENT AGENCY, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the SUBJECT TELEPHONE NUMBER, to include telephone numbers and subscriber information (published and non-published) associated with these service changes.

10. Pursuant to 18 U.S.C. § 3124, Applicant requests further that the TELEPHONE SERVICE PROVIDER, all other providers of wire or electronic communication service, or other persons furnish information, facilities, and technical assistance necessary to accomplish the installation and use of the pen/trap device and other requirements of the Court's Warrant and Orders unobtrusively, with reasonable compensation to be paid by the LAW ENFORCEMENT AGENCY for reasonable expenses incurred in providing such facilities and assistance. Applicant further specifically requests that the TELEPHONE SERVICE PROVIDER and any other telecommunications providers subject to the Warrant and Orders be directed to provide 24-hour a day switch-based engineering and technical assistance and shall notify the LAW ENFORCEMENT AGENCY prior to terminating or restricting service to SUBJECT TELEPHONE NUMBER for non-payment to enable the LAW ENFORCEMENT AGENCY to assume financial responsibility for all services, for the duration of the Warrant and Orders.

11. Applicant further requests that, upon request of the LAW ENFORCEMENT AGENCY, all records and information required to be provided pursuant to the proposed Warrant and Orders be provided in a commercially reasonable electronic format specified by the LAW ENFORCEMENT AGENCY, and that those records be delivered forthwith via electronic mail (unless delivery under the current CALEA delivery protocol is possible and requested) to the electronic mail address specified by the law enforcement agent serving the Warrant and Orders.

5

12. Applicant requests that the proposed Warrant and Orders, upon service, shall apply to any person or entity providing wire or electronic communication service in the United States whose assistance may facilitate its execution (including any internet service provider or other electronic communications provider providing voice over-Internet Protocol telephony); and that whenever served on any person or entity not specifically named therein, upon request of such person or entity, the attorney for the Government or law enforcement or investigative officer that is serving the Warrant and Orders shall provide written or electronic certification, under 18 U.S.C. § 3123(a)(1), that the Warrant and Orders apply to the person or entity being served.

13. Pursuant to 18 U.S.C. § 3123(c), Applicant requests that the proposed Order for a pen/trap device be effective in all respects for the 60 days following its execution or the time that the equipment becomes operational, whichever is later.  Pursuant to 18 U.S.C. § 2703(c)(1)(A), Applicant requests that the proposed Warrant and Order for prospective location-based services allow for the disclosure for 30 days following its execution or the date that the monitoring equipment for the device's location becomes operational, whichever is later.

14. The United States further requests that the Order require TELEPHONE SERVICE PROVIDER not to notify any person, including the subscriber of the SUBJECT TELEPHONE NUMBER, and all other telecommunications providers, persons, or entities providing service to the SUBJECT TELEPHONE NUMBER who are obligated by this Order, of the existence of the Order for two years following the date of the Court's Order, subject to renewal upon a proper showing under 18 U.S.C. § 2705(b).  This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or

6

court order." In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the targets under investigation could destroy that evidence, including information saved to their personal computers.

15. WHEREFORE, Applicant requests that the Court issue a Search Warrant and Order pursuant to 18 U.S.C. § 2703(c)(1)(A), for location-based services associated with the SUBJECT TELEPHONE NUMBER for a period of 30 days from the date of the Warrant or the date the monitoring equipment for the device's location becomes operational, whichever occurs later, and also for transactional and stored records in the possession of the TELEPHONE SERVICE PROVIDER for 60 days preceding the date the Warrant is executed up to the present.

The foregoing is based on information provided to me in my official capacity by agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Date:  ___November 20, 2019___          ___*Phil Alto*_____

Philip Alito
Assistant United States Attorney


7

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH WARRANT AND ORDERS PURSUANT TO 18 U.S.C. §§ 2703(C)(1)(A) AND 3122(A)(1) FOR THE | No. 1:19-sw-1505 |
| | No. 1:19-ec-1651 |

(1) DISCLOSURE OF PROSPECTIVE CELL-SITE DATA AND E-911 PHASE II DATA;

(2) DISCLOSURE OF STORED TELECOMMUNICATIONS RECORDS; AND

(3) INSTALLATION OF A PEN REGISTER/TRAP AND TRACE DEVICE

ON 571-379-0261

**AFFIDAVIT IN SUPPORT OF PROBABLE CAUSE**

I, Jose J. Oquendo, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an Application for a Search Warrant under 18 U.S.C. §§ 2703(c)(1)(A) for information associated with a cellular device assigned with the telephone number 571-379-0261 ("TARGET CELL PHONE"), which is serviced by AT&T ("TELEPHONE SERVICE PROVIDER"). As a provider of wireless communications service, the TELEPHONE SERVICE PROVIDER is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2. Because this warrant seeks the prospective collection of information, including cell site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4) ("pen/trap

1

device"), the requested warrant is designed also to comply with the Pen Register Act, *see* 18 U.S.C. §§ 3121–3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an Application for a Search Warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require the TELEPHONE SERVICE PROVIDER to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

4. I am a Special Agent with the the the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been since 2014. I have experience investigating narcaotics and firearms trafficking offenses.

5. The facts in this Affidavit come from my personal observations, my training and experience, as well as information obtained from federal and state law enforcement officers. All observations referenced in this affidavit that wer enot personally made by me were relayed to me by the person(s) who made such obsevations or in reports that detained the events described by that person(s). This Affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this Affidavit, there is probable cause to believe that criminal violations of 21 U.S.C. §§ 841 and 846 have been committed, are being committed, and will be committed by HERNANDEZ-PEREZ. There is also probable cause to search the

information described in Attachment A for evidence of these crimes as further described in Attachment B.

7. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, 18 U.S.C. § 2711(3)(A)(i).

PROBABLE CAUSE

8. The United States, including the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), is conducting a criminal investigation of EDGAR HERNANDEZ-PEREZ regarding possible violations of 21 U.S.C. §§ 841 and 846.

9. In July 2019, ATF and the Prince William County Police Department began jointly investigating narcotics traffickers in Prince William County. A cooperating source (CS) reported to the Prince William County Police Department that EDGAR HERNANDEZ-PEREZ was a cocaine distributor. CS will be referred to in the masculine gender, regardless of CS' true gender. CS has no criminal history and is an undocumented immigrant. CS is cooperating with law enforcement in exchange for funds.

10. Between August and October 2019, ATF and the Prince William County Police Department conducted seven controlled purchases of cocaine from HERNANDEZ-PEREZ. Each purchase occurred in Manassas, Virginia, within the Eastern District of Virginia.

11. The controlled purchases occurred on August 29, 2019; September 3, 2019; September 17, 2019; September 27, 2019; October 3, 2019; October 16, 2019; and October 28, 2019.

12. Each purchase followed the same procedure. Prior to the transaction, CS contacted HERNANDEZ-PEREZ on the SUBJECT TELEPHONE to arrange a drug buy. Law enforcement

3

searched CS prior to each purchase and did not find illegal contraband. Undercover officers (UCs) then drove CS to the location of the purchase. CS completed the purchase. Each purchase was audio recorded. After the transaction, UCs drove CS to a prearranged meeting place so that CS could provide law enforcement with the suspected cocaine. On each occasion, the suspected field-tested positive for the presence of cocaine.

13. The combined weight of the substances containing a detectable amount of cocaine fielded-tested at 620 grams.

14. In my training and experience, I have learned that the TELEPHONE SERVICE PROVIDER is a company that provides cellular communications service to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information (1) about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

4

15. Based on my training and experience, I know that TELEPHONE SERVICE PROVIDER can collect E-911 Phase II data about the location of the TARGET CELL PHONE, including by initiating a signal to determine the location of the TARGET CELL PHONE on TELEPHONE SERVICE PROVIDER's network or with such other reference points as may be reasonably available.

16. Based on my training and experience, I know that TELEPHONE SERVICE PROVIDER can collect cell-site data about the TARGET CELL PHONE. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as TELEPHONE SERVICE PROVIDER typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

17. Based on my training and experience, I know that each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers—as transmitted from a cellular device to a cellular antenna or tower—can

5

be recorded by pen/trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

18. Based on my training and experience, I know that wireless providers such as the TELEPHONE SERVICE PROVIDER typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the TELEPHONE SERVICE PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the TARGET CELL PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

<u>AUTHORIZATION REQUEST</u>

19. Based on the foregoing, I request that the Court issue the proposed Search Warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

20. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET CELL PHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of

6

behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

21. I further request that the Court direct the TELEPHONE SERVICE PROVIDER to disclose to the government any information described in Attachment B that is within the possession, custody, or control of the TELEPHONE SERVICE PROVIDER. I also request that the Court direct the TELEPHONE SERVICE PROVIDER to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with services of the TELEPHONE SERVICE PROVIDER, including by initiating a signal to determine the location of the TARGET CELL PHONE on the network of the TELEPHONE SERVICE PROVIDER or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the TELEPHONE SERVICE PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

22. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELL PHONE outside of daytime hours.

7

Respectfully submitted,

_____
Special Agent Jose J. Oquendo
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

Sworn and subscribed to before me on
_____November 20, 2019_____.

_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge

Hon. Michael S. Nachmanoff
United States Magistrate Judge